21-2555 and 21-2715. Good morning. Good morning. Good morning, your honors. May it please the court. My name is Jonathan Goldman. I represent the appellant cross appellee Truman Frierson. As this court held nearly 20 years ago in Huminski v. Coursones, when the government categorically excludes a person from a particular forum, thereby extinguishing that person's ability to engage in any and all First Amendment activity that's otherwise permitted in that forum, the ban is unreasonable as a matter of law. Did Huminski say any forum or was Huminski sort of focused on the nature of the forum and the particular breadth and centrality of that forum to kind of core First Amendment values? So Huminski dealt with a nonpublic forum, which we submit here that the government has actually even more ability to restrict speech than the limited public forum that's at issue in our case. And yes, I do agree that you do have to look at the nature of the forum and the purpose of the forum. And Huminski held that even in the context of a nonpublic forum, the court parking lot, where inside the judge and the staff were reasonably fearing for their safety based on what the plaintiff was doing, not necessarily the message and content of his speech, but what he was doing, that even in that context, when you issue a categorical notice of trespass that says you can't be on this property at all and thereby extinguishes your right to engage in even permitted speech, permitted activity, that even in a nonpublic forum, that's impermissible. Here, we have a limited public forum. We've got the interschool athletic events, the basketball games and others, whereas this court held in Johnson v. Perry, the purpose of that forum is to allow friends and family to come to spectate, to cheer on the team. These are the types of So there might be some circumstances in which somebody is enough of a threat that you could justify a ban on having them enter the property. And I might agree with you that Mr. Frierson wasn't such a threat. But didn't you get a jury trial on that point? We had a jury trial, but the jury never reached that question because that issue is an affirmative defense that the appellees must prove by preponderance of the evidence. In other words, if the ban is unreasonable, then the school district can show that in proving its affirmative defense, we had a reasonable fear of clear and present danger or disruption, the points that this court made in Johnson v. Perry, that notwithstanding the fact Well, that's about like incitement to imminent lawless actions, right? That's like Brandenburg v. Ohio or something. That's a different point than I think the point you're making, which is that it is just not tailored to the interest if you have a categorical ban. Well, Isn't that built into what the district court described? I mean, maybe it should have been more detailed in how it described it, but what the district court described is the reasonability requirement? And if that's how the district court interpreted it in deciding the motion, I believe respectfully that that was error because, again, you look at Huminski and you look at the nature of the threats. And the court said, even when you have activity or threats or things of this nature, it's unreasonable to impose a categorical ban. And even if you might want to consider that part of our claim and something we have to prove, and we had a jury trial on it, then taking Huminski into consideration, which respectfully we submit the district court error to not doing in deciding this motion, as a matter of law, the evidence here isn't enough to show that the threat was sufficient to make the restriction reasonable. In fact, Huminski was a reversal of a denial of the plaintiff's summary judgment motion. This court held in Huminski that notwithstanding all the evidence that was in the record and notwithstanding the fact that a reasonable jury could find that Judge Corsone's and her staff and everybody else reasonably feared for their safety based on what the plaintiff was doing, no reasonable jury could find that this categorical ban was reasonable as a matter of law. So even if that's something that we did have to prove in our case, and I would submit for the reasons we argue in our brief, that that's really an issue that the appellees have- The categorical ban there was not appearing on any court property, right? Correct. But I mean, not appearing on any court property is a little different than going to a basketball game where you are in proximity with the players, necessarily. Well, I don't know that I necessarily agree with that, because being on- So the judge that was afraid for her safety was not necessarily in the proximity of this protester whenever he was on court property. But Mr. Frierson would necessarily be in the proximity of the team members if he was on – if he was at the games, right? I mean, I suppose it depends on how you describe proximity. I mean, to the extent that- Right, because they're on the field and he's in the audience. Exactly. Maybe there's something that's more narrowly tailored where he wouldn't be able to approach them or whatever but could attend the games. Well, let me ask you something about that. But was that raised as a possibility? Well, there was no lesser alternative or narrow tailoring, and that's even on their own testimony, the athletic director. Let me ask you something. Yes, Your Honor. What precipitated the ban in Huminsky? My understanding and how I read Huminsky is you have the plaintiff is sending letters to public offices, sending letters to the judge's former law office, staying outside of- So expressive activity. So if that's right, here, as I understand it, but correct me if I'm wrong at any point, you have your client who walks in without authorization. This is what the trial evidence was, so we're supposed to look at it in the light most favorable to the winning party here. He walks in without authorization. He then is waiting around the girls' locker room. Then he has a- Am I wrong so far about the evidence? There's evidence in the record to support that. I would agree. He has a meeting with them, and they- It's not clear to anyone why he's there, but then he has a meeting with them, and he talks to them, and according to at least one parent, it traumatizes one of the girls, and this is all caught on video, and other parents, by the way, had also- Stop me if I'm wrong at any point. Other parents had also engaged in criticism of the coach and the coaching ability of the coach but had not been banned, but it was once- They saw the videotape that they took the action and decided to ban him. Is that right? That's all correct. There's evidence to support all of that, Your Honor. So is that- Is what he did by way of an unauthorized access into a public school and then sitting around or waiting around the girls' locker room and then having a meeting with them that was also not authorized, was that expressive activity or was that something else? Even if- I think it is partially at least expressive activity because his point was to express to the team his views of- But how about the unauthorized access going in and hanging around the girls' locker room and then having a meeting with students where you had no authority, no permission, no right to meet with them at that point? I understand- Is that expressive activity? I could see how that- Is that expressive activity? I agree that's not expressive activity, but the threats that were at issue in Huminsky also, I think, was not expressive activity in the sense of what was motivating- I think that we- I think that Huminsky sort of describes it as expressive activity. Well, if I- Well, I guess your point would be that the aspect of the protest was expressive, but the fearing for the safety of the judge would not be- any kind of menacing aspect of the protest was not itself expressive, and even that didn't justify the kind of ban. That's right. The ban wasn't based on the message that the plaintiff was conveying, that he disagreed with the judge. It was, I'm going to take things into my own hands, see what happens next, you aren't listening to me, parking right outside the courthouse where the judge thought that there might be a bomb in the car. That's perceived as a threat. That's perceived as a threat, and that's not expression. That's conduct that was perceived as a threat, and if that in itself- And you're saying if that's true, then it can't be that Mr. Frierson going into the school and having an unauthorized meeting, but not being particularly dangerous, would justify that kind of a ban. Yeah, and particularly- Two points to that. One is that Huminski also viewed the record under the same standard of view and found no reasonable juror could find that the perception of the threats by the judge and the court staff would have justified the categorical ban and entered judgment in favor of the plaintiff as a matter of law. And then secondly, if that were the case, the ban itself doesn't achieve that goal. The ban says you can't go to athletic events, but he could have gone the next night and stood outside the door and had the same meeting with the team that he had inside, and the ban didn't prevent that. The ban didn't prevent him from coming to school otherwise. So these are all reasonable arguments, but again, that goes to whether the ban was reasonable, right? Well, I think that goes to whether or not the appellees satisfy their affirmative defense of whether they reasonably feared a significant enough threat to justify an otherwise unreasonable ban. I think that reverses the burdens of proof in that regard. So the point about he came into school after hours and whatever, and that was the reason why the school imposed the ban. I mean, it is true that in the letter they do cite the fact that he was promoting a boycott, and that does seem to be based on his viewpoint. That's correct. But I suppose would you recognize that a jury could decide that actually that wasn't that important, even though it was in the letter, and they were really just relying on the fact that he entered after hours and had the meeting? That goes to the subjective motivation for the ban, and I don't think we need to establish that to establish the objective reasonableness of the ban itself. Well, they're two separate questions, right? Right. So if they impose the ban for a viewpoint-based reason, then it's impermissible. Correct. And if it's not a reasonable response to whatever legitimate interest they had, it would also be impermissible. Correct, but not only just a reasonable response. It's not that it's reasonable in light of whether the school district felt that it was justified. It's what's reasonable in light of the purpose of the forum. Again, the purpose of the forum is to allow friends and family to come and spectate and cheer on the team. By categorically banning him, they disallowed him from engaging in what's permitted in the forum. Huminski, in the hotel employees case that this court decided as well, says that when you are banning activity that's otherwise allowed in the forum, you need a much stronger justification. And that goes to the affirmative defense that the jury never reached here. Can I interrupt? I am going to interrupt again. The references to the affirmative defense, I want to make sure I'm understanding what you're meaning when you're talking about it. Yes. There's sort of this overlay of clear and present danger, etc., and then there's the question of whether it's reasonable and viewpoint neutral. Is it your position that saying this is reasonable and viewpoint neutral is an affirmative defense? No, it's part of the threshold case. We have to prove that it's either unreasonable or viewpoint based. That's correct. So what does any of this have to do with the so-called affirmative defense? Isn't this whole conversation about whether it's reasonable and viewpoint neutral? Well, the point that we were trying to express in the brief and why we felt the district court erred is because the district court said it was reasonable because the school district had this fear about this threat and they acted reasonably because of it. And our view is that that actually conflates and reverses the burdens of proof. It's unreasonable because it categorically excludes the appellant from engaging in what's permitted in the forum. But then, if the school district believes that it has this reasonable fear of threat, some clear and present danger, and the jury believes that, then the jury could still be justified in imposing what is otherwise an unreasonable badge. So in your view, the reasonableness is divorced from, this evidence about why it happened, it's not relevant to the reasonableness, it's only relevant to this overlay that you're describing as an affirmative defense. It's relevant more to the affirmative defense. It's somewhat relevant also to the plaintiff's case in chief. It is relevant to the- And that was before the jury. That was before the jury. And how I would respond to that, your- So it's not a conflation, there's some overlap. Oh, there's certainly some overlap. And when I said conflation, I wasn't suggesting, I'm not trying to suggest that there is an overlap. But the point is, to the extent it's relevant as to reasonableness, you look at the band and the purpose of the forum. And if the band were to say something like, you can't come into school property uninvited, or you can't approach the players. What does the band say here again? The band says, you cannot come to any home or away athletic events until further notice, period, end of story. Not just basketball games, any athletic event. Okay, but he can go to other events. No, well he can go- Non-athletic. Non-athletic events, yes. Well, his daughter's graduating, but he can go to graduation, he can go to any number of parent-based or community-based events. Correct, but he was excluded categorically from a particular forum. And that's the forum we have to look at when we're evaluating the reasonableness of the band. The reasonableness is, the forum, rather, is the athletic event. And it was unreasonable because it categorically and perpetually excluded him entirely. When the district court asked the jury to determine whether the band was reasonable, do you think that they were inadequately instructed on having to determine the proportionality between the interest to be served and the scope of the band? I haven't really given that much- You did not challenge the charge. We did not challenge the charge. I don't think there's been an issue raised about the charge in this appeal and whether it was appropriate or not. I think it depends on the idea that this is really part of the affirmative defense and it was a mistake to include it as part of the reasonability analysis. I think that's right, Your Honor. Thank you very much. Thank you very much. I think that's one sort of factual question, which is kind of bugging me. So there is the one, there's a lot of focus on the idea that one of the girls was disturbed and needed counseling after the meeting. I guess I'll say that she heard MB because she was a minor at the time. But then there's all this testimony that she was family friends with Frierson and knew him for a long time. And in the video, she goes up to him and seems to hug him to say goodbye and so on. So what does it mean that she was disturbed by and why did she need counseling? It's not very clear to me, frankly. I agree with Your Honor. I think the preponderance of the evidence showed that she was friendly with the family, had known Frierson. Most of the girls did. He coached them for years. Her mother did. But the testimony from the mother is that she was traumatized. And the jury could have accepted that testimony. I understand that, Your Honor. No, I understand the jury could have accepted it. I just don't understand the record and I was wondering if you could clarify. But it seems like you don't really understand it either. The mother testified to that and then our plaintiff got up on rebuttal and testified contrary to that. And I agree that it was a jury question on that issue to the extent it informed the evaluation of the claim. And there was discovery, presumably, with respect to the mother and MB. I guess there could have been an opportunity for that. We will retain very late. I think we filed a notice of appearance a couple weeks before the end of the testimony. Thank you very much. I think you've reserved some time for rebuttal. Thank you very much. So we'll hear from your friend on the other side. Thank you, Your Honors. Good morning. Good morning, Your Honors. My name is Lorraine Jelinek. I am the counsel for the appellees slash cross appellants, the Troy City School District. Can I ask you a question? Of course. Why are you really cross appealing? Didn't you win? We did, Your Honor. Okay. We did. All right. I'll just start off with that. So can you maintain a cross appeal if there's no adverse judgment against you? I'm sorry? Can you appeal for the judgment if it was not adverse to you? Well, so the issue is really this was an issue that we, like we said in the papers, was we were not aware of during the motion practice in this case. So we had gone through discovery, like we briefed in our papers. We had gone through, obviously, a motion to dismiss, summary judgment. Really the only first time that we became aware of this theory of the First Amendment. No, I understand. I understand the merits of the argument, I mean the substance of the argument. But I'm just saying you don't dispute that you won and there's no aspect of the judgment that is adverse to your interests. Right? That's correct, Your Honor. No, we certainly don't dispute the trial verdict. I think we'll treat this as a conditional cross appeal. All right. Yes. So you won. Yes. So you're going to defend. And I know that you wanted additional time, but we're going to hear your entire argument now. Right. Right. So I just. And we will not have a server battle. Sure. So if I could just briefly just touch base on the pleadings or the issue on the cross appeal, just very briefly. Yes. I just want to emphasize the fact, if you look at the pleadings in this case, it is quite obvious that the unpled or the freedom of assembly claim had never been pled in the complaint at all, let alone plausibly pled under the requirements of Rules 8 and 10. With all due respect, the amended complaint is virtually unreadable, and as we articulated in our briefing papers, we initially became aware that there was this separate cause of action for this unpled freedom of assembly claim only four days before the trial date was scheduled to move forward. During the motion practice, there was much discussion about reasonable and viewpoint neutral. Those concepts only make sense in the context of what the court described as the assembly claim, right? The retaliation claim would be a different set of standards. So whether you call it freedom of association or freedom of assembly or freedom to participate in a limited public forum, it's the same standard. So I agree that there's a lot of overlap to the claims. I think that that's really undisputed. It was the fact that at the conference that was held only a few days prior to the trial that we were informed for the first time that the jury was going to be charged separately on both of these claims, whereas they could find, or potentially they did not, but they could potentially find, or they could have held unfavorably for the district based exclusively on that freedom of assembly charge, which was obviously something that we objected to during that conference a few days before the scheduled trial. So the fact that we did not have the notice of that claim moving forward throughout discovery, obviously our motion practice, and up until the pre-trial conference was held, we did not have the opportunity to defend that claim, whereas we would have truthfully moved to dismiss early on. Am I misreading the district court's decision on the motion for summary judgment, in which the court basically says there's really two First Amendment claims woven through this argument? One of them is that the restriction impairs the freedom of association, and one is that it's retaliation for exercise of the right to free speak? So I think that the district court's analysis in both of its decisions on the motion to dismiss and the summary judgment, and I agree that there's overlap in the elements of these causes of action, but it's undisputed from the record that the first time that this unpled freedom of assembly claim was actually analyzed by the district court as a separate cause of action, when viewed under the reasonableness and viewpoint neutrality elements, was on the decision after the post-trial briefing, after this had already been decided. So prior to the decision from the district court on that post-trial motion, the unpled freedom of assembly claim was never its own separate cause of action. And I think that getting to that point a little bit more, and I know it was mentioned in the appellate's briefing that they had, or the plaintiff at least, self-servingly viewed this case as asserting a freedom of assembly claim in their opposition papers to our summary judgment. Well, one, they can't amend their complaint through opposition papers on a dispositive motion, but two, even when the decision from the district court came down on the summary judgment motion, the district court still did not distinguish between the retaliation claim and the freedom of assembly claim. I agree that there's some overlap in the underlying factual analysis, but the fact that that was not exclusively distinguished as being a separate cause of action until after the post-trial briefing. On both of these causes of action, the school needs to show that it was, that the bad was viewpoint neutral, right? Correct. Otherwise he could have been on both of those claims. And the school needs to show that the bad was tailored to the legitimate non-viewpoint based interest that it was serving, right? So that gets more to the reasonableness element. What really distinguishes the two, obviously, is the retaliatory motive, whether or not there was a retaliatory motive for purposes of the First Amendment retaliation claim. And that was another thing that I just wanted to briefly point out. For both of them, if the motive, if the reason for the ban was a viewpoint based reason, he'd prevail on both of them, right? So the focus on the motive is not different in both of the claims, right? In either restricting him from access to sporting events if you think he has a right to assemble there, or it's about whether they can impose a penalty on him because of his speech. In both of those cases, if the school is doing it because they don't like the content of his speech or the viewpoint he expresses, then he'd prevail on either one of those claims, right? Right, so I agree. Like I said, there's a lot of overlap in the elements of the claim, and that's sort of getting back to the – or moving forward, I should say, over to this conflation theory. I know the early argument is focused on the reasonableness, but before we get there, I mean the letter by which the school district sent to him and said that you're banned from athletic events, it says, we have learned that you attempted to organize a protest against our coaching staff encouraging multiple players to walk off the court. I mean is it really possible to conclude that that was not the reason for the ban when they said that in the letter by which they communicated the ban? No, no, so I know that facially from the letter, what it said, and that really you have to look at the circumstances behind why that letter was drafted, the language of that letter. This was a situation where the school districts were obligated to protect the student-athletes who they obviously had a duty to protect when they were – But they don't say that. They don't say in the letter, we think that there's a danger to our students. They say, we learned that you attempted to organize a protest, so you're banned from athletic events. Right, so the letter, so the restriction, the letter restricts him from obviously attending any athletic events, which would obviously encompass any practices, any scheduled practices where the student-athletes are mandated to attend. And the purposes of the letter, even though the, and I agree that the actual language of the letter does not specifically say games, because it is identified as being any school-sponsored or any school-athletic-related events, but it goes further than just the games. He was also restricted from attending the practices as well. I understand the scope of the ban. I'm just saying the reason for the ban, why wasn't the jury compelled to conclude that the reason for the ban is precisely what the school district said it was, which was that he organized a protest? Well, based on the trial testimony, so obviously – What did he testify? And what did Mr. Carmelo, superintendent, testify? So Carmelo had testified that every, so pretty much his, I guess, motive or his reasoning behind implementing the restriction was after viewing the video footage. And that's just something that I wanted to emphasize. It's obviously not being disputed that Mr. Fersen was on school property after hours, did not go through security, essentially trespassed into the building and captivated these student-athletes who had no other choice at that point, or at least felt as though they had no other choice. So if he had done the same thing, if he had entered the building and had an impromptu meeting in the cafeteria and just gave them a pep talk that said, you know, do a good job with your next game, the school would have taken the same action. Correct. It would have. Correct. And the fact that he wanted to organize a protest. Correct. And something that I just wanted to note was, and obviously I know we briefed it in the papers, but the audio was silent. So at the time that these decisions— Well, the audio was silent. The audio was silent. But all the communications to him, they say, we learned that it's about organizing the boycott, right? That was one of the aspects of it, yes. That was one of the things that they learned, you know, through one of the student-athletes who they had spoken to. So the letter was in front of the jury. That is, the letter from Ms. Zubayneh to Judge Menashe, I think it's a Weedy phone. Correct. But they also had the benefit of the testimony. Correct. From the letter writer, Mr. Reinisch, as well as Mr. Carmelo about why precisely they, what prompted them to start to think at least about a ban and then actually institute it. Correct. And that's where they really elaborated, you know, beyond the actual text of the letter itself. Mr. Reinisch testifies that he banned him because of what we witnessed in the video and the fact that he had made a recommendation for several members of the team to walk out on their coach. He felt as though he had forfeited his right to be around the team. So even in the testimony, he's still maintaining that it was because of the boycott. So is your position that it actually was not based on his advocacy of a protest? No, I think that— Or you don't think that that is his viewpoint, that he wanted to protest the coach? It was not based on his viewpoint. It was based on the overall impact that they were concerned that it may have to future student-athletes, and that was the purposes of the letter. And again, that's why it's so narrowly tailored, that they were really placing this very limited restriction for the purpose of at least preventing that same reoccurrence of him having access to the student-athletes who were mandated to be at practices, who are mandated, you know, they wanted to be part of the team or remain part of the team. It didn't really matter what he said. He could have said, I want you to stay on. Correct. Whatever it was that he said, but he said something, and of course the video, as you pointed out, is silent. Correct. Just the fact that he's saying anything. Correct, and then just to really— He's not actually prohibited from entering the school after hours and meeting with the students. He's only prohibited from going to athletic events, right? The thing that he did, he's not prohibited from—the prohibition is not designed to prevent him from doing that again. It's just designed to prevent him from attending the games. It's designed for the limited purpose of preventing him from having access to the student-athletes during their games and during their practices. If he were to do the same thing, you know, hypothetically speaking, of entering the school after hours, unauthorized, and, you know, which could conceivably be identified as— Maybe you should expand the ban. At that point, you know, you may have to, but at that point, again, getting back to the limited purpose of the restriction here, it was really to prevent a reoccurrence from, you know, what had happened. All right, so then go to the reasonableness point. So if—you don't dispute that he has a right to attend the games, right? That there's like a freedom of assembly or association right to attend the games. And so there needs to be justification for prohibiting him from doing that. So the restriction was specifically tailored towards that purpose so that that would not happen again. I guess I just wanted you to elaborate on that. So if the problem is that he had this unauthorized meeting in the school after hours, why does that necessitate prohibiting him from attending any of his daughter's games at the school as opposed to just saying, like, you shouldn't have contact with the team or something like that? So obviously—and again, it goes back to that same point. The student-athletes, you know, if they were to remain members of the team, they were required to attend those games. And regardless of whether or not it's a practice or a game, there is the opportunity where all of those students, again, because they're mandated, you know, to be there at that time, there is the opportunity for that same—for those same circumstances to happen again where he has access— Really so he's going to be in the middle of an athletic competition? He's going to have an unauthorized meeting with all the students? Theoretically, yes. Yes. I mean, it's very— So that is the concern, that if he attended the practices or the games, that he could then get all the students together and have a meeting with them. Well— But again, you said the substance of the meeting didn't matter. Correct. The fact that he did it after hours in the school, and that's the inappropriate part. So if he did it at a game, wouldn't that just be a totally different circumstance? It was, again, the purpose of the restriction was to prevent that from reoccurring. So there, you know, right after that meeting was held or a day after, the athletics director had spoken with one of the students, and this was something that I was just going to touch on really briefly to distinguish that from Huminsky. With Huminsky, there were mere threats conveyed through letters. No one was actually harmed at that point in Huminsky. Here, and this was right, you know, directly or before the letter, the restrictive letter was implemented, the school district officials were already aware that at least one of the student athletes had been harmed by them speaking with her after. So I'm going to give you one more minute, and then we'll hear from the other side. But go ahead. Well, no, I'd actually like to ask about that. So I asked about that to opposing counsel, and maybe you could illuminate me. So the testimony was that N.B. was a family friend of Freinich. She had been her coach, and he had known her for seven years, and she does seem to initiate a hug with him on the video as if they're friendly. What is the nature of the harm? Why was she harmed by the meeting? So, I mean, obviously I cannot, you know, speak for her personally. Her mother did testify during the— What does the record tell us about the nature of the harm? So what had happened was, you know, my understanding from the record is that she did not agree with what was taking place at that unauthorized meeting on the night that it occurred, and that created divisiveness between her and her teammates. Whether or not, you know, again, taking into consideration this is an adult, this is a child, who is going to be very influenced by, you know, an adult figure, you know, particularly an adult figure that she's— So if she's disturbed by the substance of what he's advocating, is that a viewpoint neutral reason? From her perspective? Again, I think it's more related to the school officials and how they perceive that. I mean, they're looking at this video footage where you have this individual who's not supposed to be in the building at this time, captivating and essentially exploiting these student-athletes who are children. He's physically touching them. He's hugging them, and even in the video, he actually at one point was kissing them. In the video, he's walking away, and then she seems to call him over to give him a hug. It's not—he doesn't seem to be the initiator of that interaction, right? It's hard to say because, again, the audio was silent. So we don't know what he said. We don't know—and again, these are children. These are very impressionable. Right, right. So, I mean— Thank you very much. Thank you, Your Honors. It's my understanding if you have any other questions related to the cross-appeal for the Freedom of Assembly claim. I don't think so. Okay. We'll see. Thank you. We'll hear from both. Thank you, Your Honors. There was harm in Huminski. The judge couldn't operate the business of her courtroom. She was terrified. She thought that this gentleman had a bomb in his van. She was essentially traumatized to the same extent the appellees claimed that, and he was traumatized here. There was harm in Huminski. The point is here that whatever the school didn't like about what appellant did, and even if a reasonable jury could sympathize with that and agree that the school district had reason to not like what he did and want to do something to stop that, the fact is that it opens up a particular forum to allow certain First Amendment activity, and it categorically excluded him from engaging in what was permitted. As Judge Menashe indicated, you know, he has a right to be there. If you had a concern about him engaging with the students at the game, then say you can't have contact with these students. I think Judge Menashe, so we ask questions. We're not making statements. I apologize. I didn't mean to suggest that. As I understood from the question, what I was trying to get at, or at least to understand as I understood it, was is this not a forum where the school district opens up a particular place to allow certain activity, and was not Mr. Frierson completely banned from engaging in any of that activity because of what he did on a prior occasion? I mean, I've got to tell you what strikes me, and I think Judge Menashe has indicated this as well through questions maybe, is that we have a jury trial, and you did not challenge the jury instructions, and the jury had all of this before it. If you had challenged the instructions, maybe then you'd be in a different place, but it's difficult for me to see how we overturn this jury. I understand that concern, Your Honor. So your argument relies on the idea that just based on this evidence, that no reasonable jury could possibly conclude that a total ban on attending athletic events was reasonable? That's absolutely correct, and that's what Huminski said. It said no reasonable jury could find— Well, and I understand. Of course I understand the standard, but it's hard for me to see how we can conclude that. Maybe I could try to put it this way. You have to look at what the ban did in light of the nature of the forum and the purpose of the forum, and for a jury to find that it's reasonable to exclude Mr. Frierson from just generally attending these games and doing what everybody else is allowed to do, respectfully, we submit that that's not reasonably supported by the evidence. The nature of the supposed threat that the school district put to the jury doesn't justify a categorical ban. It might justify saying don't contact the students, don't come to a practice. Oh, it could justify that. I'm sorry, Your Honor? It could justify that. Yes, but I don't think it could rationally— Did you put that argument to the jury? Did you say this isn't reasonable because they could have done something that was more narrowly tailored or more limited? I believe we did, but more importantly, we made the— So you had that—so the jury had that in front of them, right? But we also made the argument to the judge before it went to the jury on a Rule 50A motion, which— You're saying it shouldn't have been submitted to the jury because just as a matter of law, like this is just—the jury must have misunderstood what the standard is. Yes, or misapplied it based on the evidence that was before it and what the law requires to categorically exclude somebody from a forum. So now we've got, I think, your argument well in mind. We'll reserve the decision. Thank you very much. Thank you very much, Your Honors.